# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LORETTA J. WAHL**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 09-1078 |
| ) | |
| **RONALD M. GEORGE, DREW** ) | |
| **PERKINS,** ) | |
| ) | |
| Defendants. | |

## MEMORANDUM OPINION

**CONTI, District Judge.**

## I. Introduction

Pending before this court are two motions to dismiss seeking to dismiss the complaint filed by pro se plaintiff Loretta J. Wahl ("Wahl" or "plaintiff"). One motion was filed by defendant Drew Perkins ("Perkins") (Docket No. 6), and the other motion was filed by defendant Ronald M. George ("Justice George" and together with Perkins, "defendants"). (Docket No. 3). Each defendant raised, among other issues, a question whether this court lacks subject-matter jurisdiction. Because this court lacks subject-matter jurisdiction, the motions will be granted.

## II. Factual Background

The complaint is filed against Perkins, the father of plaintiff's two minor children (the "children"), and Justice George, the Chief Justice of the California Supreme Court. (Compl. ¶¶ 2-3.) Wahl and Perkins have been engaged in a custody dispute since 1999 in the Superior Court of California, County of Santa Clara. (Cal. Super. Ct. (Docket No. 1-99-FL-0885666).) Plaintiff filed this civil action seeking declaratory relief that Pennsylvania be designated the "home state," as defined in the Parental Kidnapping Prevention Act ("PKPA"), 28 U.S.C. § 1738A(b)4, and that "all future child custody and visitation issues [be] properly determined in The Ct. Common Pleas of Allegheny County Pennsylvania." (Compl. ¶ 15.)

The California trial court issued a permanent custody order dated December 9, 2005, in which Wahl was awarded sole physical custody of the children. (Compl. Ex. B ¶ 2.) The order also gave Wahl the authority to "make the day to day decisions in the Children's lives and to determine their place of residence." (Id.) Following entry of this order, Wahl and Perkins continued litigating in the California courts over custody matters. (Compl. Exs. A-F.) On November 8, 2006, Wahl sought registration of the December 9, 2005 California custody order in the Court of Common Pleas of Allegheny County Pennsylvania. (Wahl v. Perkins, No. FD-06-009228 (Fam. Div., Ct. Com. Pleas Allegheny County, Pa. Nov. 8, 2006) (Foreign Custody Order, doc. 1.)

Since 2000, Wahl has been the primary caregiver of the children and they have lived with her since that time.[1] (Compl. Ex. A ¶ 14.) Plaintiff contends that the

---

[1] The record reflects that the children live with Wahl, but also regularly visited with Perkins pursuant to various California custody orders. (Compl. Ex. B.)

2

Affidavit Invoking Residency and Domicile in Pennsylvania that she filed in the Court of Common Pleas of Allegheny County Pennsylvania on July 1, 2009, (Compl. Ex. A), was an exercise of her right to determine the children's residence. (Compl. ¶¶ 6-7.) Plaintiff contends that the affidavit "clearly, unequivocally, and without question" establishes that Pennsylvania is the children's "home state" pursuant to the PKPA and Pennsylvania courts, as opposed to California courts, should determine all future custody and visitation issues regarding the children. (Id.)

On June 25, 2009, Perkins filed "Respondent's order to show cause for modification of custody and visitation" with the California trial court. (Wahl v. Perkins, No. 1-99-FL-085666 (Fam. Ct. of the Super. Ct. of Ca., County of Santa Clara June 25, 2009) (Docket No. 0949-000.)) A hearing in the California trial court was scheduled for July 16, 2009. (Compl. Ex. C.) The California trial court found that although Wahl was properly served, she failed to attend the hearing. The California trial court issued an order granting Perkins physical custody of the children until a hearing scheduled for August 10, 2009. (Id. at ¶¶ 1-2, 6.)

On August 2, 2009, Wahl sent a letter addressed to the California trial judge and Justice George contesting the July 16, 2009 order and demanding that the children be returned to her care no later than August 8, 2009. (Compl. Ex. D.) This letter addressed to Justice George is the only allegation in the complaint relating to Justice George.

On August 3, 2009, and August 10, 2009, after her children were not returned to her care, Wahl filed in a Pennsylvania trial court a petition for custody contempt against Perkins for allegedly violating a March 16, 2009 custody order. (Wahl v. Perkins, No.

3

FD-06-009228 (Fam. Div., Ct. Com. Pleas, Allegheny County, Pa. Aug. 2009) (Pet. Custody Contempt, Doc. Nos. 10, 12)).

On August 7, 2009, Perkins filed in the Court of Common Pleas of Allegheny County Pennsylvania an affidavit application for registration of the California custody order dated March 16, 2009 entered after the July 16, 2009 hearing, (Aff. Doc. 14) (Foreign Custody Order, Doc. 11). On August 10, 2009, Perkins filed in the Pennsylvania state trial court the March 16, 2009 custody order. (See id.) (Aff.)(Doc. No. 13.)

At the rescheduled hearing on August 10, 2009 before the California trial court, Wahl appeared by phone and "repeatedly invoked Pennsylvania jurisdiction." (Compl. ¶ 12.) The California trial court continued the matter and ordered Wahl to appear on August 17, 2009 for a "mediation/screening." (Compl. Ex. E.) The California trial court ordered the parties to comply with the March 16, 2009 custody order and granted Perkins "temporary legal and physical custody of minor children pending" the August 17, 2009 hearing. (Id.)

On August 13, 2009, Wahl filed the instant action seeking to invoke the jurisdiction of this court and requesting declaratory and injunctive relief mandating that all future custody and visitation matters be determined by Pennsylvania, and not California, courts. (Compl. ¶ 15.) Perkins and Justice George filed separate motions to dismiss asking this court to dismiss Wahl's claims against them. Perkins asserts five bases for the dismissal of the claims against him: 1) lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1); 2) lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2); 3) improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3); 4) insufficiency of service of process pursuant to Federal Rule of Civil Procedure

12(b)(5); and 5) failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

Justice George moved to dismiss the claims against him on the same bases, except for insufficiency of service of process. Because this court lacks subject-matter jurisdiction over plaintiff's claims, the motions to dismiss will be granted. As the issue raised with respect to the lack of subject-matter jurisdiction is dispositive, the court will address only that issue.

### III. <u>Standard of Review</u>

The burden of establishing subject-matter jurisdiction in the district court lies with the party seeking to invoke the court's jurisdiction. <u>KVOS, Inc. v. Associated Press</u>, 299 U.S. 269, 278 (1936); <u>see</u> <u>Carpet Group Intern. v. Oriental Rug Imps. Ass'n, Inc.</u>, 227 F.3d 62, 69 (3d Cir. 2000); <u>see</u> <u>also</u> <u>Reynolds v. Army & Air Force Exch. Serv.</u>, 846 F.2d 746, 748 (Fed. Cir. 1988). If a Rule 12(b)(1) motion challenges the court's subject-matter jurisdiction based upon the sufficiency of the pleading's allegations, i.e., the movant presents a "facial" attack on the pleading, then those allegations are taken as true and construed in a light most favorable to the complainant. See <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974) (case dismissed upon facial attack on complaint, without consideration of extrinsic evidence); <u>Cedars-Sinai Med. Center v. Watkins</u>, 11 F.3d 1573, 1583 (Fed. Cir. 1993); 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.30[4], at 12-45 to 46 (2010).

If the Rule 12(b)(1) motion denies or controverts the pleader's allegations of jurisdiction, however, the movant is deemed to be challenging the factual basis for the

court's subject-matter jurisdiction. See Watkins, 11 F.3d at 1583-84 (citing Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1558-59 (9th Cir. 1987)); 5C CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1363 (3d ed. 2004). In such a case, the allegations in the complaint are not controlling, KVOS, 299 U.S. at 277-79; Trentacosta, 813 F.2d at 1559; Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979); 5C WRIGHT & MILLER, supra § 1363, and only uncontroverted factual allegations are accepted as true for purposes of the motion. See Gibbs v. Buck, 307 U.S. 66, 72 (1939); Watkins, 11 F.3d at 1583-84; 5C WRIGHT & MILLER, supra §§ 1350, 1363. All facts underlying the controverted jurisdictional allegations are in dispute and are subject to fact-finding by the district court. Watkins, 11 F.3d at 1583-84; 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.30[4], at 12-45 to 46 (2010); see generally Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990) (drawing distinction between facial and factual challenges to the court's subject-matter jurisdiction); Mortensen v. First Fed. Savs. & Loan Ass'n, 549 F.2d 884, 891-92 (3d Cir. 1977). In establishing the predicate jurisdictional facts, a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings, including affidavits and deposition testimony. Land v. Dollar, 330 U.S. 731, 735 n.4 (1947); Watkins, 11 F.3d at 1584; St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989) (court properly considered materials outside pleadings to determine whether plaintiff's claim was ripe), cert. denied, 493 U.S. 993 (1989); Reynolds, 846 F.2d at 747; Indium Corp. of Am. v. Semi-Alloys, Inc., 781 F.2d 879, 883-84, cert. denied, 479 U.S. 820 (1986).

## IV. Discussion

Defendants' motions to dismiss challenge the legal basis for the court's subject-matter jurisdiction. Defendants' challenges are factual attacks. None of the parties involved in this case dispute the underlying facts.

"[T]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Congress is vested with the authority to dictate the extent of this limited power and to confer jurisdiction on district courts when it sees fit. See Palmore v. United States, 411 U.S. 389, 400-01 (1973). Once a district court determines Congress has not granted the court jurisdiction over the matter before it, the court must dismiss the case for lack of subject-matter jurisdiction. See, e.g., Neel v. Pippy, 247 F.Supp.2d 707, 712 (W.D. Pa. 2003) (dismissing a case for lack of subject-matter jurisdiction because there was no "indicia that Congress intended to create a private federal remedy for alleged violations" of the statute in issue). There are two possible bases for subject-matter jurisdiction in this case: federal question jurisdiction and diversity jurisdiction. Each basis will be discussed.

### A. Federal Question Jurisdiction

Wahl asserts a federal claim premised upon a violation of the PKPA, which is the sole federal claim raised. There, however, is no implied federal right of action under the PKPA. In Thompson v. Thompson, 484 U.S. 174 (1988), the Supreme Court held that the PKPA "does not create a private right of action in federal court." Id. at 178-79. In Thompson, the mother and father of an infant son were divorced in California and were awarded joint custody of the child. Id. at 177-78. The mother moved to Louisiana, and

7

the California court gave her sole custody of the child pending a court investigator's custody report.  Id. at 178.  Once living in Louisiana, the mother petitioned the Louisiana state courts for enforcement of the California custody order and was awarded sole custody of the child.  Two months following that decision, the California court, after reviewing the custody investigation report, awarded sole custody of the child to the father.  Without taking action in state court, the father filed suit under the PKPA in the District Court for the Central District of California, requesting an order that declared the Louisiana decree invalid and the California decree binding on all parties.  The federal district court dismissed the action based upon lack of subject-matter jurisdiction and lack of personal jurisdiction.  Although the United States Court of Appeals for the Ninth Circuit affirmed, it dismissed the case on alternative grounds.  Id.  The court of appeals reasoned that the PKPA does not create a private right of action for federal courts to decide which of two custody orders was valid and dismissed the case finding the father failed to state a claim upon which relief could be granted.  Thompson, 484 U.S. at 178-79.

In affirming the court of appeals' decision, the Supreme Court examined Congress' intent in enacting the PKPA and found "the essential predicate for implication of a private remedy plainly does not exist."  Id. at 179.  In examining the statute, the Supreme Court found "the context, language, and legislative history of the PKPA all point sharply away" from finding the father had a claim under the statute or that the district court had jurisdiction over the matter.  Id. at 180.  In considering the statute's purpose, the Supreme Court found the statute was enacted to remedy "the inapplicability of full faith and credit requirements to custody determinations," in order to prevent parents who lost custody battles in one state from kidnapping the child and attempting to relitigate the issue in

another state.[2]  Id. at 181.  The Supreme Court stated: "The significance of Congress' full faith and credit approach to the problem of child snatching is that the Full Faith and Credit Clause . . . does not give rise to an implied federal cause of action," id. at 182 (citing Minnesota v. Northern Securities Co., 194 U.S. 48, 72 (1904), rather, it provides a "rule of decision for courts to use in adjudicating custody disputes."  Id. at 183.

The Supreme Court reasoned that "[t]he language and placement of the statute reinforce[d]" its holding:

> The PKPA, 28 U.S.C. § 1738A, is an addendum to the full faith and credit statute, 28 U.S.C. § 1738.  This fact alone is strong proof that the Act is intended to have the same operative effect as the full faith and credit statute.  Similarly instructive is the heading to the PKPA: "Full faith and credit given to child custody determinations."  As for the language of the Act, it is addressed entirely to States and state courts.  Unlike statutes that explicitly confer a right on a specified class of persons, the PKPA is a mandate directed to state courts to respect the custody decrees of sister States.

Id. (citing Cannon v. Univ. of Chicago, 441 U.S. 677, 690 n.13 (1979)).  Citing to the court of appeals' opinion, the Court found that it is "highly unlikely Congress would follow the pattern of the Full Faith and Credit Clause" in its creation of PKPA, yet "'depart from the enforcement practice followed under the Clause'" and allow a private individual to state a claim under the PKPA.  Id. (quoting Thompson v. Thompson, 798 F.2d 1547, 1556 (9th Cir. 1986)).

---

[2]  Prior to the enactment of the PKPA, many states attempted to combat the parental kidnapping problem "by adopting the 'Uniform Child Custody Jurisdiction Act' [UCCJA], 9 U.L.A. §§ 1-28 (1979)."  Thompson v. Thompson, 484 U.S. 174, 181 (1988).  This uniform act "prescribed uniform standards for deciding which State could make a custody determination and obligated enacting States to enforce the determination made by the State with proper jurisdiction."  Id.  Not all states enacted the UCCJA.  The "sponsors and supporters" of the PKPA, and ultimately Congress, sought "to provide for nationwide enforcement of custody orders made in accordance with the terms of the UCCJA."  Id.

9

Finally, the Court considered the PKPA's legislative history, which the Court found "provid[ed] unusually clear indication that Congress did not intend [for] the federal courts" to enforce state court compliance with the PKPA. Id. at 183-84. The Court quoted an exchange between Congressmen Fish and Conyers, which suggests that Congress "considered and rejected" the option of having federal courts involved with the enforcement and application of the PKPA. Id. at 185. The Court cited to a letter from former Attorney General Patricia Wald to the Chairman of the House Judiciary Committee, which compared the effect of requiring federal courts to enforce the PKPA with the effect of simply imposing a federal duty on state courts to abide by the PKPA. Id. Considering notions of federal judicial economy and the long-standing tradition of preventing federal courts from becoming involved with domestic relations issues, the letter offered support for the full faith and credit approach ultimately taken by Congress in enacting the PKPA. Id.

The Court found that Congress' reasoning for not adopting a different bill supported disallowing "the federal courts to play Solomon where two state courts have issued conflicting custody orders" because it "would entangle them in traditional state-law questions that they have little expertise to resolve." Id. at 186 (citing Rogers v. Platt, 814 F.2d 683 (D.C. Cir. 1987)). The Court refused to make "a jurisdictional determination under the PKPA" because these types of "disputes that are sufficiently complicated as to have provoked conflicting state-court holdings are the most likely to require resolution" of domestic relations issues, which are matters traditionally resolved by the states. Thompson, 484 U.S. at 186 n.4 (citing Rogers, 814 F.2d at 691; Cort v. Ash, 422 U.S. 66, 84 (1975) ("'possibility that implied federal cause of action *may* in certain instances turn on

state-law issues counsels against inferring such an action'")). The Court dismissed the father's argument "that failure to infer a cause of action would render the PKPA nugatory" by noting that "ultimate review remains available in [the Supreme] Court for truly intractable jurisdictional deadlocks." Thompson, 484 U.S. at 187. The Court noted that it would "'not engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide.'" Id. (quoting California v. Sierra Club, 451 U.S. 287, 297 (1981)).

If a party files suit in federal court asserting a claim under a statute that affords no private right of action, the claim must be dismissed for lack of subject-matter jurisdiction.[3] In Smith v. Industrial Valley Title Insurance Company, 957 F.2d 90, 92 (3d Cir. 1992), the plaintiffs, who were home sellers, brought suit under § 6045(e)(3) of the Internal Revenue Code, 26 U.S.C. §§ 1 et seq., against multiple title insurance companies for "separately charg[ing] [them] for the information reporting required by § 6045(e)(1), in violation of § 6045(e)(3)." Id. at 92. Plaintiffs filed suit in a Pennsylvania state court seeking "recovery of damages on state common law theories of conversion, unjust enrichment, and for money had and received, and for unfair or deceptive acts or practices." Id. at 91. The defendants removed the action to district court asserting that the "plaintiffs' claims 'arise under' federal law within the meaning of 28 U.S.C. §§ 1331 and 1441."[4] Id. at 92. The court of appeals disagreed with the defendants and found that because 26 U.S.C. §

---

[3] There is disagreement about whether a claim brought under a statute that provides no private right of action should be dismissed for lack of subject-matter jurisdiction or for failure to state a claim upon which relief can be granted. See, e.g., Smith v. Indus. Valley Title Ins. Co., 957 F.2d 90 (3d Cir. 1992) (Cowen, J., dissenting). In his dissent in Smith, Judge Cowen argues that federal courts have subject- matter jurisdiction to hear cases brought under federal statutes that do not provide private remedies because such cases present a substantial federal question and federal courts are best suited to interpret federal law. He argues that such cases should be dismissed for failure to state a claim upon which relief could be granted. Id.

[4] "Section 1441(b) provides in pertinent part: 'Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.'" Smith, 957 F.2d at 93 n.1 (quoting 28 U.S.C. § 1441 (b)).

11

6045(e)(3) afforded the plaintiffs no private right of action, the district court was bound to dismiss the case for lack of subject-matter jurisdiction. Id. at 94.

In reaching its determination the court of appeals relied heavily on Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804 (1986), in which the Supreme Court held:

> [A] complaint alleging a violation of a federal statute as an element of a state cause of action, *when Congress has determined that there should be no private, federal cause of action for the violation*, does not state a claim "arising under the Constitution, laws, or treaties of the United States."

Id. at 92 (quoting Merrell Dow, 478 U.S. at 817) (citing U.S.C. § 1331). Relying on this decision, the court of appeals held "that a private federal remedy for violating a federal statute is a prerequisite for finding federal question jurisdiction." Smith, 957 F.2d at 93. The court of appeals found that because Congress did not provide a private federal remedy under 26 U.S.C. § 6045(e)(3), the district court was obligated to dismiss the case for lack of subject-matter jurisdiction. Id.

The court of appeals stated that "'[a] federal rule of decision is necessary but not sufficient for federal jurisdiction'" and that "'[t]here must also be a right of action to enforce that rule.'" Id. at 93 (quoting Dillon v. Combs, 895 F.2d 1175, 1177 (7th Cir. 1990) (citing Merrell Dow, 478 U.S. 804)). Once again citing to Merrell Dow, the court of appeals reasoned:

> Once a federal court concludes Congress has decided not to provide a federal remedy for the violation of a particular federal statute, the court is "not free to 'supplement' that decision in a way that makes it 'meaningless.'"

Smith, 957 F.2d at 93 (quoting Merrell Dow, 478 U.S. at 812 n.10). The court of appeals concluded that "[s]ince Congress has not provided a private federal remedy for violating [26 U.S.C.] § 6045(e)(3), Merrell Dow dictates that the district court did not have

12

subject-matter jurisdiction." Smith, 957 F.2d at 94.

In Neel v. Pippy, 247 F.Supp.2d 707, 708 (W.D. Pa. 2003), the plaintiffs sought declaratory relief from a district court stating that the defendant, a captain in the Army Reserves, was prohibited from running for or holding the position of state senator while on active duty. The district court held:

> Because "a private federal remedy for violating a federal statute is a prerequisite for finding federal question jurisdiction," . . ., this Court must conclude that it has no subject matter jurisdiction over plaintiffs' claims based upon the alleged violation of [a federal statute].

Id. at 712 (quoting Smith, 957 F.2d at 94).

In Stephens v. High Voltage Maintenance Co., 323 F.Supp.2d 650 (E.D. Pa. 2004), the district court stated,

> The Court of Appeals for the Third Circuit has interpreted Merrell Dow as conclusively establishing the requirement of a private cause of action as a "prerequisite for finding federal question jurisdiction."

Id. at 653 (quoting Smith, 957 F.2d at 93). Relying on this reasoning, the district court held:

> It is well-settled that OSHA [Occupational Safety and Health Act, 29 U.S.C. § 653] does not create a private right of action . . . . Accordingly, this Court does not have subject matter jurisdiction over the case . . . .

Stephens, 323 F.Supp.2d at 653 (internal citations omitted).

Although the applicability of Smith to a private right of action brought under the PKPA for declaratory relief is matter of first impression for this court, the Court of Appeals for the District of Columbia Circuit dealt with a similar issue in Rogers v. Platt, 814 F.2d 683 (D.C. Cir. 1987). In Rogers, the plaintiff's claim was dismissed for lack of subject-matter jurisdiction. Maria Rogers ("Rogers") gave birth to a baby boy in

13

California and signed a form releasing the baby to Alan and Kathy Platts (the "Platts"). Within two days, the Platts took the child to their home in Washington, D.C. Five months later, Rogers filed an action in California state court to recover custody of the child. The next day, the Platts filed an action in the Washington, D.C. courts to establish custody of the child. Rogers filed a motion to dismiss the Platts' action, but the Washington, D.C. court denied Rogers' motion and asserted jurisdiction over the custody dispute "purportedly consistent with" the PKPA. The following month, the California court asserted jurisdiction over the matter and awarded custody to Rogers. Id. at 685.

Rogers filed an action in the District Court for the District of Columbia seeking a declaration that California had jurisdiction over the custody dispute under the PKPA. Id. at 686-87. The district court concluded that neither state qualified as the "home state" of the child,[5] and found "that the California court had jurisdiction because . . . California met the Act's alternative jurisdictional test, which turns on 'the best interest of the child.'" Id. at 684-85. The court of appeals, however, found the federal court lacked subject-matter jurisdiction over the case and dismissed it. Id. at 685. The court reasoned: "[I]f Congress has a specific intent on the ultimate question as to whether a given federal statute does or does not confer federal jurisdiction that, perforce, sweeps aside all other inquiry." Id. at 688 (citing Merrell Dow, 478 U.S. at 830).

The court found that "when Congress passed the PKPA it had such a specific intent directed to the issue of federal jurisdiction -- an intent *not* to confer power to interpret its

---

[5] "[T]he District Court held that neither California nor the District of Columbia was the 'home state' because the child had not literally 'lived from birth with' either the plaintiff or defendants in either state," which would have been necessary to meet the "home state" requirements set forth in the PKPA. Rogers, 814 F.2d at 687 (citing PKPA, 28 U.S.C. § 1738A(a)(4)).

14

provisions on the lower federal courts."[6] Id. at 689. The court of appeals held that reading Merrell Dow along with Thompson, "converts Thompson's holding that Congress intended no federal cause of action into a determination that there is no federal jurisdiction."[7] Id. at 689. After a discussion of the PKPA's legislative history similar to that of the Supreme Court's in Thompson, the court of appeals concluded:

> [I]n light of the legislative history, the words of the statute and its location in the U.S. Code, the absence of any reference to federal courts was the product of a deliberate congressional judgment that the jurisdiction of the federal courts not be expanded.

Id. at 695-96. The court dismissed Rogers' claim for lack of subject-matter jurisdiction. Id.

---

[6] In Rogers, the court of appeals noted, "[a]ll other circuits that have faced this question, however, have followed the lead of the Third Circuit in Flood and both granted federal jurisdiction and provided a federal remedy" under the PKPA. Rogers, 814 F.2d at 689 (citing with disapproval Flood v. Braaten, 227 F.2d 303 (3d Cir. 1984); Hickey v. Baxter, 800 F.2d 430 (4th Cir. 1986); McDougald v. Jenson, 786 F.2d 1465 (11th Cir. 1986); Heartfield v. Heartfield, 749 F.2d 1138 (5th Cir. 1985)). The district court in Rogers erroneously relied on Flood, and found that it had subject-matter jurisdiction over the custody dispute under the PKPA. Rogers, 814 F.2d at 684-85, 687.
     In Flood, the Third Circuit Court of Appeals held that the domestic relations exception to diversity jurisdiction does not apply "when a litigant has otherwise made out a well-pleaded and substantial complaint alleging federal subject-matter jurisdiction." Flood, 227 F.2d at 307. The court of appeals stated that although the case before it did not require the resolution of "an 'implied cause of action issue,'" it was able to find that the district court had subject-matter jurisdiction to entertain a claim brought under the PKPA. Id. at 307 n.13. The court of appeals reasoned that "in limited circumstances of noncompliance with § 1738A, federal district court intervention is permissible" because "[a]bsent some tribunal capable of enjoining violations of the strict and uniform requirements of § 1738A, the Congressional policy underlying the enactment would be thwarted." Id. at 310. Flood, however, predated the Supreme Court's decision in Thompson and in McLaughlin v. Pernsley, 876 F.2d 308, 312-13 (3d Cir. 1989), the Court of Appeals for the Third Circuit recognized that Thompson overruled Flood's finding that a federal claim can be asserted under the PKPA. The court of appeals noted that the PKPA "has since been construed by the Supreme Court [in Thompson], contrary to Flood, not to create an implied cause of action." Id. The court also found the holding in Flood, that the domestic relations exception does not apply to "arising under" jurisdiction, "remains unsullied." Id.

[7] In Rogers, the court of appeals noted that "[a]lthough Merrell Dow predates Thompson by two months, the parties in Thompson apparently did not bring Merrell Dow to the attention of the Ninth Circuit." Rogers, 814 F.2d at 689 n.7

15

Following the Supreme Court's decision in Thompson, many federal courts followed the analysis of Rogers and found district courts lacked subject-matter jurisdiction to entertain claims "arising under" the PKPA. See, e.g., Becker v. State of California, No. 92-16676, 1994 WL 41073, at *1 (9th Cir. Feb. 10, 1994) (finding the PKPA does not "provide a cognizable federal claim, as it has been found not to create a private right of action in federal court"); Nwankwo v. Nwankwo, No. 92-1624, 1992 WL 474105, at *1 (1st Cir. Dec. 9, 1992) (holding "there was no basis for original subject matter jurisdiction over the PKPA claim under 28 U.S.C. § 1331, because the PKPA does not provide an implied private federal cause of action"); Cahill v. Kendall, 202 F.Supp.2d 1322, 1327 (S.D. Al. 2002) (stating "[s]imply put, no provision of § 1738A can serve as a basis for federal jurisdiction because § 1738A confers no federal cause of action"); La Maina v. Brannon, 804 F.Supp 607, 611 (D.N.J. 1992) (holding the district court did not have jurisdiction under the PKPA to issue a declaratory judgment because the defendant "failed to articulate any federal statutory basis for" such relief).

Wahl argues that Thompson does not apply in the present case because she is not asking this Court to "entangle" itself in domestic relations issues and decide which of two states' custody decrees is valid. See Id. at 186. Instead, she argues that she is simply seeking declaratory relief that Pennsylvania is the "home state" and has jurisdiction over the custody issues between Perkins and her. Wahl argues that this court has jurisdiction to issue declaratory relief under the PKPA. Wahl's seeking declaratory relief, as opposed to a custody decree, from this court is of no consequence to the determination whether this court has subject-matter jurisdiction over this case. See e.g. Neel, 247 F.Supp.2d 707, 712 n.2 (finding that "[t]he Declaratory Judgment Act, 28 U.S.C. § 2201, creates no

independent basis for federal jurisdiction, and is limited to those cases which are otherwise within the jurisdiction of the district court"); see also Ragoni v. United States, 424 F.2d 261 (3d Cir. 1970). There is no federal claim asserted in the complaint and, therefore, there is no federal question jurisdiction.

B. Diversity Jurisdiction

Wahl also contends that there is diversity jurisdiction within the meaning of 28 U.S.C. § 1332. Perkins and Justice George argue that even assuming that there is diversity of citizenship, she failed to meet the required amount in controversy of $75,000. (Perkins' Mot. ¶¶ 11, 12); (Justice George's Br. in Supp. of Mot. 7-8). It is plaintiff's burden to establish the amount in controversy. The Court of Appeals for the Third Circuit recognized:

> In diversity cases, we generally accept a party's good faith allegation of the amount in controversy, but where a defendant or the court challenges the plaintiff's allegations regarding the amount in question, the plaintiff who seeks the assistance of the federal courts must produce sufficient evidence to justify its claims.

Columbia Gas Transmission Corp. v. Tarbuck, 62 F.3d 538, 541 (3d Cir. 1995). To dismiss a diversity case on the basis the jurisdictional amount was not shown, the court must be "certain that jurisdictional amount cannot be met." Id. Here, plaintiff seeks $75,000 in recovery based solely on the continued "cost of litigation." (Compl. ¶ 15). 28 U.S.C. § 1332(a), however, requires the sum in controversy to exceed $75,000 and be "exclusive of interest and costs." Id. Plaintiff failed to meet the burden to establish the amount in controversy and on the record before this court, the court is certain plaintiff cannot meet the jurisdictional amount requirement. Without the requisite amount in

controversy, there is no diversity jurisdiction.[8]

## V. **Conclusion**

Because there is no federal claim asserted in the complaint and the required amount in controversy is not met for diversity jurisdiction, the court lacks subject-matter jurisdiction to hear this case. The motions to dismiss (Docket Nos. 3, 6) filed by defendants must be granted. The complaint will be dismissed with prejudice.

Dated: July 30, 2010

By the court,

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
U.S. District Judge

---

[8] Dismissal for lack of diversity jurisdiction may also be proper under the "domestic relations" exception to diversity jurisdiction. In cases "'involving the issuance of a divorce, alimony, or child custody decree,'" there is no diversity jurisdiction. Matusow v. Trans-County Title Agency, LLC, 545 F.3d 241, 242 (3d Cir. 2008) (quoting Ankenbrandt v. Richards, 504 U.S. 689, 704 (1992)). The issues presented in this case appear to be intertwined with and involve the issuance of child custody decrees.